UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IVAN G. MCKINNEY | Civil Action No. 14-3563 (SDW-JBC) |
| Plaintiff, | |
| v. | OPINION |
| CHRISTOPHER HOLMES, et al., | |
| Defendants. | |

This matter comes before this Court on the motion for summary judgment by Defendant Christopher Holmes ("Holmes") (ECF No. 173); Plaintiff's opposition brief to Holmes' motion for summary judgment (ECF No. 178); and Holmes' reply brief (ECF No. 179). For the reasons discussed below, this Court will grant Holmes' motion for summary judgment.

I.  PROCEDURAL HISTORY

Pro se Plaintiff Ivan McKinney ("Plaintiff") initiated this prisoner civil rights action under 42 U.S.C. § 1983 on June 4, 2014, alleging, in pertinent part, that the defendants provided him with constitutionally inadequate medical care while he was incarcerated in South Woods State Prison ("SWSP") beginning around 2010. (ECF No. 4). The original complaint was severed into three separate actions. (ECF No. 3). This action was designated for claims against "John Doe Superintendent – SWSP." (*Id.*) On July 26, 2018, Plaintiff, upon leave of Court, substituted Christopher Holmes, Administrator of SWSP, as the defendant. (ECF Nos. , 66).[1]

---

[1] Plaintiff also named John and Jane Doe medical staff (the "Doe Defendants") as defendants in the amended complaint, although he had not yet identified or served them with process. (ECF No. 70). Therefore, Plaintiff's claims against the Doe Defendants will be dismissed without prejudice because he did not identify and serve the Doe Defendants within 90 days of filing the amended complaint under Fed. R. Civ. P. 4(m). *See e.g., Manuel v. Atkins*, 545 F. App'x 91, 95

1

On October 12, 2018, Plaintiff filed an amended complaint alleging that Holmes violated the Eighth Amendment by failing to act when medical staff refused him treatment for his serious medical needs, and for deliberate indifference in violation of Plaintiff's Fourteenth Amendment right to equal protection of the law, by treating Plaintiff differently from other prisoners.[2]

## II.  DISCUSSION

### A. Legal Standard for Summary Judgment

A court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (cleaned up).  The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

---

(3d Cir. 2013) ("the District Court properly dismissed all claims against John Doe" because John Doe was not timely identified or served under Rule 4(m)).

[2] Holmes argues that Plaintiff's Fourteenth Amendment substantive due process claim is subsumed by his Eighth Amendment claim under the more specific provision rule.  (ECF No. 173-1 at 19-20).  However, the more specific provision rule is inapplicable because Plaintiff alleges a discrimination claim under the Fourteenth Amendment, not a substantive due process claim based on inadequate medical care.  *See Wharton v. Danberg*, 854 F.3d 234, 246 (3d Cir. 2017) (quoting U*nited States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (describing the "more specific provision" rule).  Plaintiff's bald allegation that Holmes treated him differently than other prisoners by taking no action on Plaintiff's written complaints about his medical care fails to state a claim.  *See e.g.*, *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (holding the plaintiff failed to identify similarly-situated individuals who were intentionally treated differently than himself, without any rational basis).  Therefore, this Court will *sua sponte* dismiss Plaintiff's Fourteenth Amendment equal protection claim, with prejudice because amendment is futile at the summary judgment stage, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) ("the Court shall dismiss the case at any time, if the Court determines that-- … the action … fails to state a claim on which relief may be granted….")

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"A party asserting that a fact … is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B). If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion … [or] grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]" *Blunt*, 767 F.3d at 265 (citing *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007)).

**B. Legal Standard for Eighth Amendment Inadequate Medical Care Claim**

Supervisors are not vicariously liable under 42 U.S.C. § 1983 for the alleged constitutional violations of their employees. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* In the Third Circuit, "'a supervisor may be personally liable ... if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.

3

2004)). Alternatively, supervisors may be liable "if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm[.]'" *Id.* at 121, n. 5.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment ban on cruel and unusual punishments. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).  Medical negligence or an inmate's mere disagreement with the medical treatment provided is insufficient to establish a Constitutional violation. *Id.* (citations omitted).  Deliberate indifference exists where: (1) the medical provider intentionally inflicts pain on the prisoner; (2) prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury; (3) knowledge of the need for medical care is accompanied by the intentional refusal to provide that care. *Id.* (internal quotation marks and quotations omitted).  Non-medical prison officials are not deliberately indifferent based solely on the failure "to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Spruill*, 372 F.3d at 236 (quoting *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).  If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.*  After the point at which an inmate was first under medical care, to establish a non-medical prison official's deliberate indifference, a plaintiff must establish the official had "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating)" him. *Id.* (citing *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001)).

### C. Undisputed Material Facts

This Court derives the undisputed material facts from Holmes' Statement of Undisputed Material Facts (ECF No. 173-2) and Plaintiff's Counter Statement of Undisputed Material Facts

(ECF No. 178-2). Plaintiff was incarcerated at SWSP on two separate occasions: March 12, 2008, through August 8, 2010, and June 28, 2011, through February 22, 2012. (ECF No. 173-5 at 16). In his amended complaint, Plaintiff substituted Defendant Christopher Holmes for SWSP Administrator Willie J. Bonds. (ECF No. 173-7 at 3).

On or about June 30, 2008, University of Medicine & Dentistry of New Jersey (hereinafter "UMDNJ") and the State of New Jersey Department of Corrections entered into an agreement for inmate healthcare services ("the Agreement.") (ECF No. 173-8, ¶ 2). The term of the Agreement was thereafter extended several times. (*Id.* ¶ 3). While Plaintiff was incarcerated at SWSP from June 28, 2011, through February 22, 2012, UMDNJ was under contract to provide medical healthcare to inmates. (*Id.*)

Plaintiff acknowledged, in his deposition, that he received medical treatment at SWSP and New Jersey State Prison.[3] (ECF No. 173-5 at 60-86). Plaintiff also acknowledged in his deposition testimony that he saw multiple medical professionals at SWSP, and they treated him with medication. (*Id.*) On July 23, 2010, Ombudsman Anthony Thomas, L.P.N. at SWSP, noted on Plaintiff's medical record that Plaintiff declined the offer for surgery to fix his hernia while at SWSP, because he was due to be released soon. (ECF No. 173-5 at 39-40). When Plaintiff returned home, he obtained a prescription for hernia surgery on October 14, 2010, but he was incarcerated again before having surgery. (*Id.* at 41-42; ECF No. 178-7 at 2-4). Plaintiff ultimately had hernia surgery on July 7, 2014. (*Id.* at 45).

---

[3] Plaintiff challenges the completeness of his medical records pursuant to the requirements of N.J.A.C. 10A:16-2.18. Plaintiff discussed his medical records in his deposition, but his medical records have not been offered in support of Holmes' motion for summary judgment. (ECF No. 173-4). Therefore, Plaintiff's challenge to the completeness of his medical records is immaterial for purposes of summary judgment. *See* Fed. R. Civ. P. 56 (c) (2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.")

In a declaration in support of his opposition to summary judgment, Plaintiff states his lawyer, Jeffrey B. Steinfeld, Esq., contacted Holmes on Plaintiff's behalf. (ECF No. 178-3, ¶ 4). Steinfeld provided an affidavit, stating he sent Holmes a letter recounting Plaintiff's serious medical needs. (ECF No. 178-6, ¶ 4). In discovery, Steinfeld produced a September 26, 2011 letter he wrote to Holmes. (ECF No. 178-6 at 12-16). The letter described two correction officers harassing Plaintiff. (*Id.* at 15-16). The only mention of Plaintiff's medical condition was that an officer reassigned Plaintiff to a bunk that he could not get in and out of, due to his back and leg problems from a prior injury. (*Id.*) In his affidavit, however, Steinfeld said he made several phone calls to Holmes about Plaintiff's hernia, noting he could see Plaintiff's hernia through his shirt. (*Id.*, ¶ 5). Steinfeld also said he informed Holmes about Plaintiff's pain from his hernia and his other medical problems with his neck, knee and back. (*Id.*, ¶¶ 6, 7). Steinfeld was also aware that Plaintiff reached out to Holmes himself on many occasions, to no avail. (*Id.*, ¶ 8). In his written answers to Plaintiff's deposition questions, Holmes did not recall receiving a letter, fax or phone call from Steinfeld on September 26, 2011. (ECF No. 173-10 at 29, 31, 40). Holmes' procedure for handling medical complaints received by the administration was to forward the complaints to the medical department. (ECF No. 173-10 at 19, 25, 28). He did not recall receiving complaints from Plaintiff, his attorney or the medical ombudsman, nor did he recall forwarding any complaints to the medical department or speaking to anyone in the medical department about Plaintiff. (ECF No. 173-10 at 30-31, 40-42).

**D. Analysis**

For his amended complaint against Holmes to survive summary judgment, Plaintiff relies on a theory that a non-medical prison administrator violates the Eighth Amendment by failing to take action upon receiving correspondence and/or phone calls from an inmate and the inmate's

attorney, advising the administrator that the inmate was not receiving adequate medical care from the prison's medical professionals. (ECF No. 178). Plaintiff further alleges Holmes' failure to have a procedure for reviewing and responding to an inmates' medical complaints caused Plaintiff to receive inadequate medical care. (*Id.*) There are genuine disputed facts over whether Holmes received correspondence from or spoke to Plaintiff's attorney about Plaintiff's medical complaints and whether Holmes had any knowledge of Plaintiff's medical care. However, even if Plaintiff prevailed on these disputed facts, his Eighth Amendment claim against Holmes would fail.

In his Counter Statement of Undisputed Material Facts, Plaintiff explains that he does not "dispute he received medical treatment at SWSP." (ECF No. 178-2, ¶ 26). His claim is that he "needed surgery and he was punished for refusing [surgery] prior to leaving Southwood State Prison in 2010." (*Id.*) In his declaration in opposition to summary judgment, Plaintiff explained that after he was released from SWSP [in August 2010], he obtained a prescription for hernia surgery on October 14, 2010. (ECF No. 178-3, ¶ 5; ECF No. 178-7). Before he could have surgery, he was incarcerated in SWSP again. (ECF No. 178-2, ¶¶ 12-14).

When an inmate is receiving medical treatment from staff, a non-medical prison official is permitted to assume medical staff are exercising medical judgment. S*ee generally Caterbone v. Lancaster Cnty. Prison*, 811 F. App'x 721, 723 (3d Cir. 2020) (quoting *Inmates of Allegheny Jail v. Pierce*, 612 F. 2d 754, 762 (3d Cir. 1979) ("Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment.'")) A non-medical official's knowledge of and failure to act on an inmate's disagreement with the medical treatment provided in prison is insufficient to establish deliberate indifference to an inmate's serious medical needs. *See Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005) (failure to take any action on an inmate's correspondence voicing disagreement with

the care provided by medical staff is insufficient to establish an Eighth Amendment claim); *Davis v. Brown*, 556 F. App'x 87, 90 (3d Cir. 2014) (non-medical official is not deliberately indifferent after reading grievance about medical care and deferring to medical judgment); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate[']s grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."). In summary, the Eighth Amendment does not require non-medical staff to intervene when an inmate is receiving treatment from medical personnel. *See Parkell v. Danberg*, 833 F.3d 313, 336–37 (3d Cir. 2016) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding non-medical defendants are not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Because Plaintiff was receiving medical treatment, he may not hold a non-medical official liable under the Eighth Amendment.

Holmes is further protected by qualified immunity because clearly established law did not put him on notice that failure to have procedures in place to forward an inmate's medical complaint to the prison's medical professionals, when the inmate was already receiving medical care, violated the Eighth Amendment. *See Mack v. Yost*, 63 F.4th 211, 228 (3d Cir. 2023) (a defendant is entitled to summary judgment on the second prong of the qualified immunity defense, if he meets his burden to show that reasonable officials under the circumstances present could not have known their actions violated clearly established law, viewed with a high degree of specificity); s*ee Durmer*, 991 F.2d at 69 (non-medical officials were not "deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.") An inmate's remedy for disagreement with the standard of medical

care provided lies in a medical malpractice action, rather than a civil rights action for violating the Constitution. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") For these reasons, Holmes is entitled to summary judgment on Plaintiff's Eighth Amendment claim under 42 U.S.C. § 1983.

IV. **CONCLUSION**

For the reasons discussed above, Defendant Christopher Holmes is entitled to summary judgment on Plaintiff's amended complaint, and this Court will dismiss the claims against the Doe Defendants under Fed. R. Civ. P. 4(m).

An appropriate Order follows.

_____
Hon. Susan D. Wigenton
United States District Judge
Dated: October 1, 2024